UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL A. ERLICH,

    Plaintiff,

v.                                                Case No: 2:17-cv-469-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Michael A. Erlich's Complaint, filed on August 21, 2017. (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (Doc. 11) (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum (Doc. 21) setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.   Social Security Act Eligibility, the ALJ's Decision, and Standard of Review**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## B.  Procedural History

On June 4, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits, asserting an onset date of April 6, 2012. (Tr. at 153). Plaintiff's application was denied initially on November 15, 2012, and upon reconsideration on March 4, 2013. (*Id.* at 153–54). A hearing was held before Administrative Law Judge Bruce MacDougall ("ALJ MacDougall") on September 26, 2013. (*Id.* at 111–52). ALJ MacDougall issued a fully favorable decision on October 1, 2013. (*Id.* at 160–67). The ALJ found Plaintiff to be under a disability from April 6, 2012, through the date of the decision. (*Id.* at 167). On January 26, 2016, the Appeals Council reviewed the October 1, 2013 decision and remanded the case to an Administrative Law Judge to:

- Consider the claimant's work activity, and if he performed substantial work activity within twelve months of the onset date. If the Administrative Law Judge finds the claimant performed substantial work activity within twelve months of the claimant's onset date, he will find the claimant is not disabled as of his onset date. The Administrative Law Judge will further develop the claimant's earnings record and the nature of his work activity to determine if he is disabled at the later onset date. The Administrative Law Judge will also consider the claimant's request to amend his disability onset date.

- Complete the record with any available medical reports from treating and non-treating physicians for the entire period at issue and, if necessary, obtain additional evidence concerning the claimant's physical and mental impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence.

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations.

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the occupational base. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy. Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations.

(*Id.* at 172–73 (internal citations omitted)). On August 11, 2016, Administrative Law Judge Tammy Whitaker (hereinafter "the ALJ") held a hearing during which Plaintiff and vocational expert ("VE") Jennifer Guediri testified. (*Id.* at 53–102). At the hearing, Plaintiff amended his alleged onset date to December 1, 2012. (*Id.* at 57–58). On January 12, 2017, the ALJ issued an unfavorable decision, finding Plaintiff was not under a disability from the amended alleged onset date through the date of the decision. (*Id.* at 44).

On June 28, 2017, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1–4). Plaintiff filed a Complaint in this Court on August 21, 2017. (*See* Doc. 1). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 12). This case is ripe for review.

C. **Summary of the ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functioning capacity ("RFC") to perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237– 40 (11th Cir. 2013).

The ALJ found that Plaintiff meets the insured status requirements through June 30, 2021. (Tr. at 33). At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 1, 2012, the amended alleged onset date. (*Id.*). At step two, the ALJ found that Plaintiff suffers from the following severe impairments: post-traumatic brain injury with history of grade 3b concussion syndrome and retrograde amnesia; a history of post concussive syndrome associated with cervical myofascial pain and dysfunction and radiculopathy of his left arm; spondylosis of the cervical spine with chronic neck pa[i]n and cervicalgia; chronic post traumatic cervical pain with myofascial dysfunction; spondylosis of the lumber spine with chronic back pain; chronic headaches; chronic cerviogenic headaches; cavernous hemangioma of intracranial structures of right paramedian pontines; chronic tinnitus of the left ear; obstructive sleep apnea-hypopnea syndrome; major depressive disorder; depression; mood disorder associated with general medical condition; anxiety; and post-traumatic stress disorder ("PTSD"). (*Id.* at 34). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (*Id.*).

At step four, the ALJ found the following:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR [§] 404.1567(b) except that he can lift, push, pull, and carry 10

pounds occasionally and 5 pounds frequently. The claimant can sit six hours in an eight-hour workday, and stand and walk, in combination, for two hours in an eight-hour workday. He is limited to work that allows the claimant to sit and stand alternatively, provided that at one time, the claimant can only sit for one-to-two hours, only stand for 30 minutes, and only walk for 30 minutes, and further provided that the claimant would be in a new position five minutes before resuming the prior position. The claimant can only occasionally engage in pushing or pulling of hand or arm controls. The claimant can never climb ladders, ropes and scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl. He should have no exposure to a work environment with a noise level rating of four (i.e. loud noises) and five (i.e. very loud noises), as those noise level ratings are defined by the Dictionary of Occupational Titles (DOT) and its companion publication. He should have only occasional exposure to irritants such as fumes, odors, dusts, or gases. He should have no exposure to unprotected heights and dangerous machinery. The claimant is limited to simple, routine, and repetitive work, with "simple" defined as unskilled work. The claimant is also limited to work that allows him to be off-task five percent of the workday in addition to regularly scheduled breaks. He is limited to a work environment free of fast-paced production requirements and work with only occasional interaction with co-workers and the public.

(*Id.* at 36–37).

The ALJ determined that Plaintiff was unable to perform his past relevant work as a computer sales representative and field service engineer. (*Id.* at 42). The ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, and found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 43). The ALJ noted that the vocational expert identified the following representative occupations that Plaintiff was able to perform: table worker, DOT # 739.687-182, unskilled, sedentary work with an SVP of 2; final assembler, DOT # 713.687-018, unskilled, sedentary work with an SVP of 2; and a nut or fruit sorter, DOT # 521.687-086, unskilled, sedentary work with an SVP of 2. (*Id.*). The ALJ therefore concluded that Plaintiff was not under a disability from December 1, 2012, through the date of the decision. (*Id.*).

## II. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## III. Analysis

On appeal, Plaintiff raises three (3) issues. As stated by the parties in the Joint Memorandum, they are:

1) Whether the ALJ properly evaluated the opinion evidence.

2) Whether the ALJ's response to the post-hearing memorandum objections to the vocational expert's testimony was legally sufficient.

3) Whether the ALJ's credibility analysis is legally sufficient.

(Doc. 21 at 22). The Court addresses each issue in turn.

### A. Weight of Physicians' Opinions

Plaintiff argues that the ALJ failed to give the opinions of his treating physicians substantial weight or articulate good cause for declining to do so. (Doc. 21 at 22–32). He explains the ALJ did not acknowledge these physicians were specialists in the fields of neurology and psychology, that their opinions were consistent with each other, and that their treatment of Plaintiff spanned four years. (*Id.* at 25–30). Instead, Plaintiff argues the ALJ substituted her own lay opinion of Plaintiff's limitations without ordering a consultative examination or otherwise relying on any medical opinion. (*Id.* at 28, 32). Plaintiff argues because the medical opinions establish far greater limitations than the ALJ found in determining Plaintiff's RFC, the ALJ's error requires remand. (*Id.* at 24-25).

The Commissioner argues that the ALJ properly evaluated the medical opinions of record and is not required to address every aspect of a medical opinion or discuss every factor in 20 C.F.R. § 404.1527. (*Id.* at 24-25). The Commissioner contends substantial evidence supports Plaintiff's RFC. (*Id.* at 32–39).

#### 1. Legal Standard for Weight of Physician's Opinion

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and, based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Id.* Weighing the opinions and

findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citations omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011). When evaluating a medical opinion, the ALJ considers various factors, including: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's specialization. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). The ALJ need not explicitly address these factors. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

Without a statement specifying the weight given to medical opinions, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (citing *Cowart v. Shweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled

to substantial or considerable weight unless good cause is shown to the contrary. *Phillips*, 357 F.3d at 1240. The Eleventh Circuit has concluded that "'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.*[2]

To begin, the Court addresses the opinions of Plaintiff's first treating neurologist, Shafi Wani, M.D.

### 2. Dr. Wani's Opinion

Plaintiff was involved in a motor vehicle accident on February 10, 2006, when as he was driving, he became dizzy, collided with a concrete barrier, hit the steering wheel, and lost consciousness. (Tr. 584). Dr. Wani treated Plaintiff for conditions resulting from this accident beginning May 24, 2011, seeing him on average at least once a month until July 29, 2013, administering trigger point injections, and prescribing him medication to manage his pain. (Tr. at 545–554, 560–83, 591–92, 620–97, 740–57). On August 22, 2013, Dr. Wani completed a Headaches Medical Source Statement in which he reported Plaintiff suffers from daily post-concussion syndrome headaches that vary in intensity from moderate to severe, with the severe headaches preventing all activity. (*Id.* at 608–09). Dr. Wani indicated that bright lights, moving around, and noise make Plaintiff's headaches worse, and lying down, taking medication, being in a quiet place or a dark room improves the headaches. (*Id.* at 609–10). Dr. Wani opined that

---

[2] After Plaintiff filed his application and the ALJ issued the decision, certain Social Security rulings and regulations have been amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See, e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c and 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016). The Court applies the rules and regulations in effect at the time of the ALJ's decision because the regulations do not specify otherwise. *See Green v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 516, 521 (11th Cir. 2017).

Plaintiff's headaches are very much due to emotional factors and stress worsens them. (*Id.* at 610). Dr. Wani opined that Plaintiff was capable of part-time work under 20 hours a week due to his overall condition. (*Id.*). Dr. Wani noted that trigger point injections provided mild temporary relief and medication provided limited help. (*Id.*). He further opined that Plaintiff would need to take breaks to lie down when he got a headache and would be "off task" 25 percent or more while at work due to his symptoms interfering with attention and concentration. (*Id.* at 611). Dr. Wani concluded these symptoms began on the date of the accident, February 10, 2006, and that Plaintiff would not improve from his current condition. (*Id.*).

In a second questionnaire also dated August 22, 2013, Dr. Wani opined that Plaintiff could carry less than 10 pounds, stand and walk less than 2 hours, sit about 3 hours, sit for 30 minutes without changing position, stand for 15 minutes without changing position, must walk around 10 minutes, for 5 minutes each time, and needs to shift at will from sitting or standing/walking and be able to lie down at unpredictable intervals. (*Id.* at 613–14). Dr. Wani cited his history and examination to support these opinions, although he did not further specify. (*Id.* at 614). Dr. Wani again opined Plaintiff was limited to a 20-hour work week but did not include any additional explanation on this form. (*Id.*).

In evaluating Dr. Wani's opinion, the ALJ summarized the opinions contained in both of Dr. Wani's August statements and indicated that she gave them partial weight. (*Id.* at 40). The ALJ explained:

> His opinion that the claimant is limited to sedentary work and that he needs to avoid pulmonary irritants are well supported and consistent with the record. However, the medical record does not indicate that the claimant is incapable of performing any work more than 20 hours per week, or that his headaches will keep him off-task 25 percent of the workday. On the contrary, the claimant testified that he was able to perform sedentary work in eight-hour shifts, and that he has been able to control his headaches with over-the-counter medication.

(*Id.* at 40). In weighing Dr. Wani's opinion, the ALJ does not appear to have weighed the treating relationship with Plaintiff, the length and frequency of treatment, or his specialization in neurology. While the ALJ is not required to explicitly address each factor in 20 C.F.R. § 404.1527(c), it is unclear from the ALJ's opinion that she considered each of them. Moreover, the ALJ did not provide good cause for rejecting Dr. Wani's opinions. First, the ALJ's assessment that the medical record lacks any indication Plaintiff cannot work over 20 hours ignores the opinions of Plaintiff's other treating physicians—Drs. Daryl and Adam Di Dio—who also independently determined he should not work more than 20 hours a day,[3] and the treatment notes reflecting that the more Plaintiff works, the more stress he is under, which in turn increases his tinnitus, headaches, anxiety, and mood swings. (Tr. at 603, 606, 626, 628, 634, 677–78, 760, 771, 824, 826, 835, 892).

The ALJ did not cite any medical evidence suggesting Plaintiff can work greater hours. Instead, the ALJ appears to have relied on Plaintiff's testimony at the hearing to determine that he had worked eight-hour shifts and could control his headaches with medication. (*Id.* at 40). This reliance is problematic for reasons the Court cannot resolve based on the current record. The record supports that Plaintiff is dealing with such severe psychological conditions that he sees a psychotherapist weekly for treatment. Plaintiff has been seeing Dr. Daryl Di Dio for at least six years. (*Id.* at 836). Moreover, Plaintiff's medical records and each of his treating physicians' opinions are consistent that working worsens his symptoms. (Tr. at 610, 626, 628,

---

[3] Adam Di Dio is Daryl Di Dio's son. (Tr. at 764). The Court will refer to both doctors by their first and last names for clarity. From a review of the record and Drs. Wani, Adam Di Dio, and Daryl Di Dio's opinions, it does not appear that any doctor reviewed the questionnaires completed by any other doctor. Plaintiff also represents that each doctor made independent assessments. (Doc. 21 at 26). The Court recognizes the ALJ also rejected the opinions of Drs. Daryl and Adam Di Dio but finds this too was error as discussed below.

760, 771, 824, 826, 836). Although Plaintiff testified to working eight-hour shifts at Allied Security in 2013, his medical records demonstrate that he had to quit this position due to stress, which exacerbated his condition. (Doc. 21 at 27-28 (citing Tr. at 824)).

Although the ALJ may ultimately discredit Dr. Wani's opinions on remand, doing so may require additional medical evidence given the psychological and neurological complexity of Plaintiff's condition. *See Hillsman v. Bowen*, 804 F.2d 1179, 1182 (11th Cir. 1986) (finding error where the ALJ "rejected the opinions of the treating physician not even on the basis of a differing opinion expressed by another doctor, but rather because [the] ALJ himself reached a different conclusion after viewing the medical records"). Moreover, Plaintiff's ability to work during his time under Dr. Wani's care appears to have been largely due to his ability to receive trigger point injections that provided relief. (Tr. at 570–71, 582–83, 591–92, 661, 669, 673, 740). Plaintiff testified that he could no longer receive trigger point injections and was only able to take over-the-counter medication because of a clot in his head. (*Id.* at 72). The ALJ's characterization of Plaintiff's testimony regarding the effectiveness of this medication is also inaccurate. These medications provided "a little bit" of relief or somewhat controlled his headaches on a temporary basis. (*Id.*). Plaintiff's testimony does not, however, contradict Dr. Wani's findings regarding Plaintiff's difficulties with concentration or the limitation to part-time work due to Plaintiff's inability to handle almost any stress.

Therefore, the Court finds that the ALJ failed to sufficiently apply 20 C.F.R. § 404.1527(c) and either accord Dr. Wani's opinion sufficient weight as a treating physician or articulate good cause for her failure to do so. Because Dr. Wani's opinions relate directly to the ALJ's RFC finding and are more restrictive, the ALJ's error was not harmless and the decision of the Commissioner is due to be reversed accordingly.

### 3. Dr. Adam Di Dio

Upon moving to Florida, Plaintiff saw neurologist Dr. Adam Di Dio for pain management from August 19, 2014, until at least March 21, 2016. (Tr. at 65, 824–31, 843–859, 861–71, 874–91, 900–04). Dr. Adam Di Dio completed a Medical Assessment of Ability to do Work-Related Activities and a Headache Medical Source Statement on December 3, 2015. (*Id.* at 814–20). In his Headaches Medical Source Statement, Dr. Adam Di Dio reported Plaintiff suffers from daily post-concussion syndrome headaches that vary in intensity. (*Id.* at 814). Dr. Adam Di Dio opined that Plaintiff was incapable of even low stress work because of his anxiety, depression, and PTSD. (*Id.* at 816). Dr. Adam Di Dio also opined that Plaintiff would need to take breaks to lie down when he got a headache and would be "off task" 25 percent or more while at work due to his symptoms interfering with attention and concentration. (*Id.* at 817).

In a separate letter on April 26, 2016, Dr. Adam Di Dio explained his observations and opinions about Plaintiff's condition:

> Ever since this accident he has suffered from intractable headaches, tinnitus, neck and pack pain, cervical radiculopathy, anxiety, depression, posttraumatic stress disorder, sleep abnormalities, and cognitive impairment. He has now been treated by several neurologists and has a regular psychologist. He has had multiple rounds of physical therapy, treatment with pain management including injections, and is maintained on regular medical treatment with clonazepam and Paroxetine. Unfortunately, the medications have persistent side effects of fatigue and malaise. Complicating matters the fact that he has Obstructive sleep apnea-hypopnea syndrome (OSAHS) and has been unable to tolerate CPAP, which has resulted in further daily fatigue. While his medications are somewhat effective, we have been unable to completely control his psychiatric symptoms. He has frequent bouts of increasing depression, social isolation, and mood swings. In addition, MRIs of his brain have demonstrated a right paramedian pontine lesion consistent with capillary telangiectasia. While an incidental finding, I have had great concerns about this vascular lesion with potential rupture. Therefore I have advised strict blood pressure control and avoidance of physical labor that could result in elevation of blood pressure.
> It is my professional opinion that Mr. Erlich is unable to work on a full time, remunerative basis given his impairments. Physical labor is precluded by several conditions, including the above-mentioned vascular abnormality in his brain, but

> also by his chronic headaches, neck and back pain. More pertinent, however, is his inability to maintain the proper level of focus, concentration, and attention based upon his psychiatric conditions, cognitive impairment, and medication side effects. At least on several occasions he has attempted to resume work on a part-time basis, and, in addition to the above-mentioned reasons, he has been unable to handle the stress and pressure as he has limited capacity to adapt.
>
> My professional opinion, Mr. Erlich should not be engaged in any type of occupation which requires sitting, standing, or walking for more than 4 hours total per day. He must avoid any physically laborious activity that could result in elevation in blood pressure. Finally, he is psychologically and cognitively incapable of work requiring executive decision making, planning or organization.

(*Id.* at 835).

As with Dr. Wani, the ALJ gave Dr. Adam Di Dio's opinion that Plaintiff would be off-task for 25 percent or more of the workday little weight. (*Id.* at 41). The ALJ again rejected the opinion based on Plaintiff's testimony that he could perform work in eight-hour shifts and control his symptoms with medication. (*Id.*). For the same reasons discussed above, the Court finds these reasons insufficient to establish good cause to discount the opinion of a treating physician.

The ALJ's additional reasons for discounting Dr. Adam Di Dio's opinions are equally insufficient. The ALJ found the limitations in Dr. Adam Di Dio's questionnaire were inconsistent with Dr. Adam Di Dio's normal neurological examinations and observed that he did not provide the medical basis for them. (*Id.*). The ALJ appears to have treated each of Dr. Adam Di Dio's opinions in isolation of each other, failing to acknowledge the medical explanation provided in the April 26, 2016 letter. In the letter, Dr. Adam Di Dio explained that Plaintiff's issues with concentration and attention were largely psychological in nature and those symptoms have not been controlled. (*Id.* at 835). Despite the rather lengthy explanation quoted above, the ALJ dismissed the restrictions in the letter with minimal discussion, stating "The medical record supports the claimant's limitation to sedentary work activity, but the record as a

whole indicates that the claimant is capable of a more than part time work as discussed above." (*Id*. at 41). In the absence of any citation to the record, the Court is left to assume that the ALJ is again relying on Plaintiff's testimony that he has worked for eight-hour shifts in the past and is able to take over-the-counter medication. As discussed above, however, this is not sufficient to constitute good cause and amounts to reversible error.

### 4. Dr. Daryl Di Dio

Dr. Daryl Di Dio is a clinical psychologist who has been seeing Plaintiff weekly since May 2010. (Tr. at 599). On September 12, 2012, Dr. Daryl Di Dio completed a form for the New York State Office of Temporary Disability Assistance, Division of Disability Determinations. (*Id.* at 599–605; *see also id.* at 704–15). He observed Plaintiff suffered from nightmares, mood fluctuations, anxiety, anger and impulsiveness, and tinnitus. (*Id.* at 599). He also observed Plaintiff had experienced symptoms of post-traumatic stress since his accident, becoming depressed, anxious, and suffering from nightmares. (*Id.* at 601). Dr. Daryl Di Dio noted that Plaintiff could not attend and concentrate. (*Id.*). He was seeing Plaintiff for outpatient therapy on a weekly basis. (*Id.*). Dr. Daryl Di Dio opined that Plaintiff could not stand a noisy environment, tolerate large groups, travel any significant distance, and he found that his persistence and pace was also limited. (*Id.* at 603). Dr. Daryl Di Dio opined that Plaintiff could work part-time in a low-stress environment near his home. (*Id.*). The following year, on July 17, 2013, Dr. Daryl Di Dio reported on another state agency form that he continued seeing Plaintiff weekly for 45-minute psychotherapy sessions, opining that he was unable to maintain full-time employment, suffering from PTSD, nightmares, increased startle, avoidance, anxiety and depression/mood swings. (*Id.* at 606). Dr. Daryl Di Dio also opined, "Post concussion

syndrome and difficulties with attention and concentration render him 100 percent disabled from his former occupation." (*Id.*).

Dr. Daryl Di Dio also completed a medical source statement August 21, 2013, opining that Plaintiff had marked limitations in the ability to respond to others in a work setting based on his history of frequent outbursts, poor social judgment and episodes of rage and physical threats. (*Id.* at 618). In another letter dated February 19, 2013, Dr. Daryl Di Dio again recommended Plaintiff be limited to less than full time hours in a noise-free, reduced environment. (*Id.* at 712). Dr. Daryl Di Dio explained:

> It is important to understand that two factors have led to Mr. Erlich's psychological difficulties. One important factor of course was the automobile accident and post concussion syndrome that he suffered following that accident and the second factor is the environment within which he worked which exacerbated his tinnitus and subsequent anxiety and depression.
>
> At the present time, difficulties associated with continuation of necessary neurological treatment is creating additional stress which has exacerbated his depression.
>
> Mr. Erlich continues to be treated by the undersigned in individual psychotherapy for treatment of his post traumatic stress, anxiety, and depression which are associated with the accident, stress from employment situation, and now additional difficulties in obtaining treatment for pain and injury.

(*Id.* at 712–13).[4] Dr. Daryl Di Dio completed another medical source statement on December 8, 2015, finding only moderate limitations in his ability to interact with the public but again finding marked limitations in his ability to interact with coworkers and supervisors. (*Id.* at 833). Dr. Di Dio explained Plaintiff experiences significant difficulties within this domain. (*Id.*). Plaintiff has had frequent outbursts with family, co-workers, employers, and strangers, and at times can

---

[4] Dr. Di Dio repeated the first and last paragraph in another letter dated October 4, 2012. (Tr. at 716-17).

be rude and offensive. (*Id.*). Dr. Daryl Di Dio also explained that Plaintiff has chronic tinnitus/neurological difficulties, which impact his psychological status. (*Id.*).

An ALJ cannot pick and choose which evidence supports her decision while disregarding evidence to the contrary. *Oliver v. Colvin*, No. 8:13-CV-2614-TBM, 2015 WL 10791904, at *6 (M.D. Fla. Mar. 23, 2015) (citing *McCruter*, 791 F.2d at 1548). If an ALJ fails to articulate reasons to disregard contrary medical evidence, then this is reversible error. *Id.* (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)). The ALJ in this case again appears to have considered medical opinions in isolation of each other, even from the same provider—Dr. Daryl Di Dio. For example, the ALJ stated the opinion of Dr. Daryl Di Dio that Plaintiff was 100 percent disabled was vague and did not specify his limitations and capabilities. (Tr. at 41).[5] Within the same form, however, Dr. Daryl Di Dio explained that Plaintiff continues weekly individual psychotherapy sessions addressing his anxiety, depression, and frequent mood swings, which combined with his tinnitus, post-concussion syndrome and difficulties with attention and concentration prevent him from full-time employment. (*See id.* at 606).

The ALJ also rejected Dr. Daryl Di Dio's opinion as to the degree of limitation with his attention and concentration because she found the medical records did not support the degree of limitation or the limitation to part-time work, despite the agreement of his other treating physicians that Plaintiff had such a limitation. (*Id.* at 42). The ALJ cites Dr. Adam Di Dio's treatment notes indicating that Plaintiff's mental status examinations were consistently unremarkable. (*Id.* at 42). The ALJ appears to have disregarded the specialization of Drs. Adam

---

[5] Neither party disputes that whether a claimant is disabled is an issue reserved to the Commissioner and an opinion as to that issue is not entitled to any deference. (Doc. 21 at 30–31, 36–37 (citing 20 C.F.R. § 1527(d)). The opinions forming the basis for the conclusion that Plaintiff is disabled, however, are entitled to deference absent good cause to reject them. *Winschel*, 631 F.3d at 1178–79.

Di Dio and Daryl Di Dio, with the latter specializing in mental health, and again ignored Dr. Adam Di Dio's opinions that Plaintiff's psychological impairments were creating the most difficulty in his ability to function. (*Id.* at 834). The Commissioner suggests the lack of treatment notes indicates Dr. Daryl Di Dio's letters are unsupported. (Doc. 21 at 38). The ALJ does not appear to have relied on the absence of records from Dr. Daryl Di Dio's 45-minute weekly psychotherapy sessions in discounting his opinion.

To be clear, the Court is not requiring the ALJ to reach a different conclusion. Indeed, the ALJ may find that there are inconsistencies within the records or opinions of Drs. Wani, Adam Di Dio, and Daryl Di Dio that justify discounting their opinions. Without any medical evidence of Plaintiff's ability to work more than part-time in light of his neurological and psychological conditions, however, the ALJ is improperly substituting her own opinion for those of Plaintiff's treating physicians. Because the ALJ did not provide good cause for discounting Drs. Wani's, Adam Di Dio's, and Daryl Di Dio's opinions and because the Court cannot be certain that a correct application of the regulations would not alter the outcome here, the Court cannot affirm the ALJ's decision. *Cf. Denomme*, 518 F. App'x at 878. Moreover, the Court declines to affirm the ALJ's decision simply because some other rationale might have supported the ALJ's conclusion.[6] *See Winschel*, 631 F.3d at 1179.

In sum, the ALJ erred in reviewing the opinion evidence of record. The Court, therefore, reverses and remands the decision of the Commissioner on this issue.

---

[6] For example, the Commissioner argues Dr. Wani indicated on his questionnaire that Plaintiff's symptoms and limitations began in 2006 even though Plaintiff was able to work for some time thereafter. (Doc. 21 at 35 (citing Tr. at 611)). Dr. Adam Di Dio also used the accident date as the start of Plaintiff's limitations. (Tr. at 817). The ALJ, however, did not identify this potential inconsistency as a basis to discredit either Dr. Wani or Adam Di Dio's opinion. Thus, the Court cannot consider it.

B. **Remaining Issues**

Plaintiff's remaining issues focus on the ALJ's evaluation of the vocational expert's testimony and Plaintiff's credibility. Because the Court finds that on remand, the Commissioner must reevaluate the medical evidence, which may require additional evidence, the disposition of these remaining issues would, at this time, be premature.

IV. **Conclusion**

Upon consideration of the submission of the parties and the administrative record, the Court finds that the decision of the Commissioner is not supported by substantial evidence.

**IT IS HEREBY ORDERED:**

(1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to: (1) reconsider the medical records and opinions of in light of all of the medical evidence of record; and (2) reevaluate Plaintiff's RFC in light of all of the medical evidence of record and obtain any additional evidence as necessary, including additional testimony from a vocational expert.

(2) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

(3) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE AND ORDERED** in Fort Myers, Florida on August 29, 2018.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record